## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

SARA E. KRINSK,

       **Plaintiff,**

vs.                                        Case No. 8:09-CV-909-T-27EAJ

SUNTRUST BANKS, INC., et al.,

       **Defendants.**

_____/

### ORDER

**BEFORE THE COURT** are SunTrust Bank's Motion to Dismiss Plaintiff's Class Action Complaint (Dkt. 11), the Motion to Dismiss Plaintiff's Class Action Complaint for Lack of Personal Jurisdiction and Failure to State a Claim on Which Relief May Be Granted filed by SunTrust Banks, Inc. and James M. Wells, III (Dkt. 16), Defendants' Motion to Strike the Declaration of James A. Wardell (Dkt. 45), and SunTrust Banks, Inc. and James M. Wells, III's Motion for Rule 11 Sanctions (Dkt. 34). Upon consideration, the motions to dismiss (Dkts. 11, 16) are **GRANTED** in part, the motion to strike (Dkt. 45) is **DENIED** as unnecessary, and ruling on the motion for Rule 11 sanctions (Dkt. 34) is **DEFERRED**.

*Background*

Plaintiff's complaint alleges the following facts which are assumed to be true for purposes of Defendants' motions to dismiss under Rule 12(b)(6). On December 20, 2006, Krinsk and SunTrust Bank entered into a home equity loan agreement which provided Krinsk with a $500,000 line of credit. The loan was secured by a first mortgage on Krinsk's residence, which had been appraised at approximately $1.6 million. Krinsk complied with all obligations in the loan agreement.

1

The following year, SunTrust Bank experienced "[b]road based financial deterioration" which "was increasingly apparent to Defendants from at least SunTrust's fourth quarter of calendar year 2007." (Compl. ¶ 9). "By the end of 2007," SunTrust Bank "recognized that there existed a significant concentration of credit risk arising from loans it issued secured by residential real estate." (*Id.*). SunTrust Bank adopted "a calculated response" to the financial deterioration, which involved repudiating certain outstanding lending commitments. (Compl. ¶ 10). In particular, SunTrust Bank focused on its agreements with elderly customers, believing that their resistance would be minimal. (Compl. ¶ 24).

As part of the alleged scheme, SunTrust Bank requested updated financial information from Krinsk, who was 92 years old. (Compl. ¶¶ 26, 28). SunTrust Bank did not specifically state that the information would be used to reassess her entitlement to the line of credit. (Compl. ¶ 27). Krinsk provided the requested information. (Compl. Ex. G; Compl. ¶ 28). Shortly thereafter, SunTrust Bank suspended her borrowing privileges, citing its "reasonable concern that [she would] be unable to fulfill [her] payment obligations with [it] under [her] credit line account because of a material change in [her] financial circumstances." (Compl. Ex. H; Compl. ¶ 28). According to SunTrust Bank's letter, the decision was based on a report obtained from the credit reporting agency Equifax. (Compl. Ex. H). The letter informed Krinsk that she could obtain a copy of the report directly from Equifax. (*Id.*). Notwithstanding the suspension, Krinsk could request reinstatement of her borrowing privileges upon providing additional financial documentation. (*Id.*).

Krinsk commenced this action against SunTrust Bank, its corporate parent, SunTrust Banks, Inc. ("SBI"),[1] and the President and Chief Executive Officer of SunTrust Bank and SBI, James M.

---

[1] SBI represents that it is not the direct parent of SunTrust Bank. However, for purposes of SBI's motion to dismiss, the facts alleged in the complaint are taken as true.

Wells, III.  Krinsk contends that each defendant is liable for financial elder abuse, breach of contract,

deceit, negligent misrepresentation, violation of Regulation Z of the Truth in Lending Act, and

breach of the implied covenant of good faith and fair dealing.  She alleges that SunTrust Bank is also

liable for breaching its fiduciary duties.  Plaintiff requests a declaratory judgment regarding her

entitlement to the line of credit.  She also seeks to certify a class of similarly situated persons.[2]

Defendants have moved to dismiss the complaint, arguing that Krinsk has not stated a claim for

relief.  SBI and Wells argue that they are not liable for the acts of SunTrust Bank and, in any event,

this Court lacks personal jurisdiction over Wells.

*Standard*

A complaint must provide "a short and plain statement of the claim showing that the pleader

is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Although detailed factual allegations are not required,

a conclusory statement of the elements to a cause of action will not suffice.  *Ashcroft v. Iqbal*, ---

U.S. ---, 129 S. Ct. 1937, 1949 (2009).  The complaint must allege sufficient facts which, when taken

as true, "state a claim to relief that is plausible on its face." *Id.* "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Id.* "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is

entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

---

[2] By separate order, ruling on Krinsk's motion for class certification has been deferred while the parties take
additional discovery. (Dkt. 68).

*Analysis*

1.    *Financial Elder Abuse*

A "vulnerable adult" who has been "exploited" may sue for compensatory and punitive damages pursuant to Florida's Adult Protective Services Act. Fla. Stat. § 415.1111. SunTrust Bank argues that Plaintiff has not pled sufficient facts to meet the statutory definitions of "vulnerable adult" and "exploitation."

A "vulnerable adult" is a "person 18 years of age or older whose ability to perform the normal activities of daily living or to provide for his or her own care or protection is impaired due to a mental, emotional, long-term physical, or developmental disability or dysfunctioning, or brain damage, or the infirmities of aging." Fla. Stat. § 415.102(26).  Krinsk alleges that she is vulnerable due to the infirmities of aging.  However, she has not alleged facts related to the essential statutory elements, namely, that she cannot "perform the normal activities of daily living" or "provide for [] her own care." Plaintiff has therefore failed to allege facts qualifying herself as a vulnerable adult within the meaning of the statute.  *See Woodruff v. TRG-Harbour House, Ltd.*, 967 So. 2d 248, 250 (Fla. 3d DCA 2007).   "Exploitation" within the meaning of the Adult Protective Services Act occurs when a person who "[s]tands in a position of trust and confidence with a vulnerable adult . . . knowingly, by deception or intimidation, obtains or uses, or endeavors to obtain or use, a vulnerable adult's funds, assets, or property with the intent to temporarily or permanently deprive a vulnerable adult of the use, benefit, or possession of the funds, assets, or property for the benefit of someone other than the vulnerable adult." Fla. Stat. § 415.102(7)(a).  Examples of exploitation include "[b]reaches of fiduciary relationships, such as the misuse of a power of attorney or the abuse of guardianship duties, resulting in the unauthorized appropriation, sale, or transfer of property."  Fla.

Stat. § 415.102(7)(b). The statute defines "fiduciary relationship" as "a relationship based upon the trust and confidence of the vulnerable adult in the caregiver, relative, household member, or other person entrusted with the use or management of the property or assets of the vulnerable adult." Fla. Stat. § 415.102(10).     SunTrust Bank argues that the loan agreement does not give rise to a fiduciary relationship.  "A bank and its customers generally deal at arm's-length as creditor and debtor, and a fiduciary relationship is not presumed." *Building Educ. Corp. v. Ocean Bank*, 982 So. 2d 37, 40-41 (Fla. 3d DCA 2008).  However, an implied fiduciary relationship may arise "where the bank knows or has reason to know that the customer is placing trust and confidence in the bank and is relying on the bank so to counsel and inform him."  *Id.* at 41 (quotation omitted). A fiduciary relationship may also be implied where the lender "takes on extra services for a customer, receives any greater economic benefit than from a typical transaction, or exercises extensive control." *Id.* (quotation omitted).

Whether an implied fiduciary relationship exists depends "upon the specific factual situation surrounding the transaction and the relationship between the parties."  *See Capital Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. 3d DCA 1994).  Krinsk has not pled facts which would give rise to such a relationship.  The facts alleged in the complaint demonstrate, at most, that the bank supplied her with information about the loan.  Plaintiff has not pled facts which would show that Sun Trust Bank knew or had reason to know that she was placing trust and confidence in the bank or that she was relying on the bank to counsel her.  Nor has Plaintiff alleged that SunTrust Bank received any additional benefit or performed any services other than that of a traditional lender.  In sum, Plaintiff has not alleged circumstances which "exceed[] an ordinary commercial transaction." *See id.* at 521.

Plaintiff has therefore failed to demonstrate the existence of a fiduciary relationship with SunTrust Bank.  Indeed, the examples of fiduciary relationships listed in the statute, while not exclusive, are far removed from the lender-borrower relationship alleged in the complaint. *See* Fla. Stat. § 415.102(10) ("fiduciary relationship" within the meaning of the Adult Protective Services Act includes "court-appointed or voluntary guardians, trustees, attorneys, or conservators of a vulnerable adult's assets or property"). Plaintiff has not alleged the type of relationship contemplated by the definition of "exploitation" and therefore has not stated a cause of action for financial elder abuse.

2.   *Breach of Contract*

A breach of contract claim requires "(1) a valid contract; (2) a material breach; and (3) damages." *Friedman v. New York Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008).  Krinsk alleges that SunTrust Bank suspended her line of credit in breach of the loan agreement.  SunTrust Bank argues that the loan agreement permitted suspension of the line of credit "during any period in which . . . [w]e reasonably believe that you will be unable to fulfill your payment obligations under your Credit Line Account due to a material change in your financial circumstances." (Compl. 1-2, at 4).  SunTrust Bank argues that Plaintiff failed to allege that her financial situation had not materially changed.  However, regardless of any change to her circumstances, the loan agreement only authorized SunTrust Bank to suspend the credit line upon a reasonable belief that she would be unable to fulfill her payment obligations.  Whether SunTrust Bank actually had such a belief and whether that belief was reasonable are issues which cannot be resolved on a motion to dismiss. Krinsk has therefore stated a cause of action for breach of the loan agreement.

3.   *Deceit and Negligent Misrepresentation*

A cause of action for fraud must allege that "(1) the defendant made a false statement regarding a material fact; (2) the defendant knew that the statement was false when he made it or

made the statement knowing he was without knowledge of its truth or falsity; (3) the defendant intended that the plaintiff rely and act on the false statement; and (4) the plaintiff justifiably relied on the false statement to his detriment." *Simon v. Celebration Co.*, 883 So. 2d 826, 832 (Fla. 5th DCA 2004).   The elements of a negligent misrepresentation claim are similar: "(1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely and on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation." *Id.*

Krinsk's fraud and negligent misrepresentation claims falter on the second element.  The misrepresentations on which she relies appeared in loan documents that the parties executed in December 2006. (Compl. ¶¶ 65, 73).  However, the factual predicate which rendered the statements allegedly false was an alleged scheme that SunTrust Bank devised in response to the financial deterioration that occurred in late 2007. These allegations cannot support a reasonable inference that SunTrust Bank knew or should have known that the representations in the loan documents were false at the time they were made.[3]  Plaintiff has therefore failed to state a cause of action for fraud or negligent misrepresentation.

Further, the economic loss rule bars Plaintiff's attempt to state a claim in tort based on several statements which she alleges constituted fraudulent or negligent misrepresentations.  The

---

[3]  To the extent Plaintiff alleges that SunTrust Bank misrepresented or failed to disclose certain terms and conditions which appeared in the loan agreement, she cannot state a claim for fraud or negligent misrepresentation. *See TRG Night Hawk Ltd. v. Registry Dev't Corp.*, 17 So. 3d 782, 784 (Fla. 2d DCA 2009) ("A party cannot recover for alleged false misrepresentations that are adequately dealt with or expressly contradicted in a later written contract.").

economic loss rule "sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Indemnity Ins. Co. of N. Am. v. Am. Aviation, Inc.*, 891 So. 2d 532, 536 (Fla. 2004). The doctrine "prevent[s] parties to a contract from circumventing the allocation of losses set forth in the contract by bringing an action for economic loss in tort." *Id.* at 536. Consequently, "a tort action is barred where a defendant has not committed a breach of duty apart from a breach of contract." *Id.* at 537.

The economic loss rule does not generally extend to claims for fraudulent inducement and negligent misrepresentation, which are torts "committed independently of the contract breach" and therefore require proof of facts separate and distinct from the breach of contract. *Id.* at 537, 543. Fraud constitutes an independent tort to the extent it "occurs prior to the contract and the standard of truthful representation placed upon the defendant is not derived from the contract, i.e., whether the defendant was truthful during the formation of the contract is unrelated to the events giving rise to the breach of the contract." *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239-40 (Fla. 1996) (internal quotations and citations omitted).

A close reading of the complaint demonstrates that, notwithstanding the labels placed on her claims, several representations on which Plaintiff's causes of action for fraud and negligent misrepresentation rely are substantively indistinguishable from her claim for breach of contract. Plaintiff alleges that the following representations were fraudulent:

> (a) Plaintiff and the Class' equity credit line pursuant to the Loan Agreement would be safely available during the indicated Term in accordance with the conditions and provisions of the Loan Agreement;
> . . .
>
> (c) Plaintiff and the Class were marketed their equity line in accordance with the Loan Agreement with the understanding it would be available

8

up to the Credit Limit during the Draw Period provided Plaintiff was
not in default.

(Compl. ¶ 65). Similarly, Plaintiff alleges that SunTrust Bank negligently misrepresented that the

loan "would safely be available in accordance with the terms and conditions of the Loan

Agreement." (Compl. ¶ 73). These representations relate directly to SunTrust Bank's performance

of the contract. Significantly, Plaintiff has not alleged or argued that SunTrust Bank did not intend

to perform its contractual obligations at the time the parties executed the loan agreement. Indeed,

Plaintiff relies on the argument that SunTrust Bank devised a scheme to suspend or terminate its

outstanding loan commitments nearly a year after the parties entered the loan agreement. At most,

Plaintiff has alleged a scheme to breach existing contractual obligations. Accordingly, to the extent

Plaintiff relies on these representations in the loan documents, her claims against SunTrust Bank for

fraud and negligent misrepresentation are barred by the economic loss rule. *See Hotels of Key

Largo, Inc. v. RHI Hotels, Inc.*, 694 So. 2d 74, 77 (Fla. 3rd DCA 1997) ("[W]here the only alleged

misrepresentation concerns the heart of the parties' agreement, simply applying the label of

'fraudulent inducement' to a cause of action will not suffice to subvert the sound policy rationales

underlying the economic loss doctrine."); *Vesta Constr. & Design, L.L.C. v. Lotspeich & Assocs.,

Inc.*, 974 So. 2d 1176, 1181-82 (Fla. 5th DCA 2008) (claims based on negligent misrepresentations

directly related to the breaching party's performance of the contract are barred by the economic loss

rule).

Finally, Defendants argue that Plaintiff failed to plead fraud or negligent misrepresentation

with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. Courts have

interpreted Rule 9(b) to require "plaintiffs to differentiate their allegations when suing more than one

defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1439 (M.D. Fla. 1998) (quotation omitted). Plaintiff's allegations involve the "Defendants" generally.   These allegations fail to apprise each defendant of his or its respective participation in the fraud.  Plaintiff has therefore failed to plead fraud or negligent misrepresentation with the particularity required by Rule 9(b).

4.     *Breach of Fiduciary Duty*

As discussed, Krinsk failed to plead sufficient facts to support the existence of a fiduciary relationship with her lender.  Accordingly, she has not stated a claim for breach of fiduciary duty.

5.     *Regulation Z of the Truth in Lending Act*

Regulation Z of the Truth in Lending Act restricts a lender's ability to make certain changes to home equity loan agreements. 12 C.F.R. § 226.5b(f). Lenders may only terminate a loan agreement or suspend additional credit advances under specific circumstances.   12 C.F.R. § 226.5b(f)(2)-(3).  A creditor may "[p]rohibit additional extensions of credit or reduce the credit limit applicable to an agreement during any period in which . . . (B) The creditor reasonably believes that the consumer will be unable to fulfill the repayment obligations under the plan because of a material change in the consumer's financial circumstances." 12 C.F.R. § 226.5b(f)(3)(vi).  This was the ground on which SunTrust Bank relied as evidenced in its letter to Plaintiff suspending her line of credit.

According to the official staff interpretations to Regulation Z, a lender may only suspend a borrower's credit privileges temporarily. 12 C.F.R. § 226, Supp. I, 5b(f)(3)(vi)(2); *see Johnson v.*

*Fleet Finance, Inc.,* 4 F.3d 946, 949 (11th Cir. 1993) ("The official staff interpretations of Regulation Z, unless demonstrably irrational, are binding."). Once the circumstances justifying the suspension cease to exist, the line of credit must be reinstated. 12 C.F.R. § 226, Supp. I, 5b(f)(3)(vi)(2). Therefore, after suspending a borrower's credit, the lender must continue to monitor the borrower's financial situation. 12 C.F.R. § 226, Supp. I, 5b(f)(3)(vi)(4). However, this duty may be shifted to the borrower, in which case the lender is not required to investigate the borrower's financial situation until the borrower requests reinstatement. *Id.*

Plaintiff alleges, first, that SunTrust Bank did not specify the material changes to her financial circumstances and, second, that the bank shifted the credit reinstatement initiative to her without providing prior notice. Plaintiff argues that she had no realistic opportunity to request reinstatement and therefore her line of credit was effectively terminated. Preliminarily, Plaintiff has not cited any authority for the proposition that a lender must identify all material changes to the consumer's financial circumstances when suspending a line of credit. Regulation Z simply requires the notice to "contain specific reasons for the action." 12 C.F.R. § 226.9(c)(1)(iii). Further, as noted, the duty to request reinstatement may be shifted to the borrower. 12 C.F.R. § 226, Supp. I, 5b(f)(3)(vi)(4). However, Regulation Z does not require the lender to provide notice of its intent to shift the duty to the borrower prior to suspending future credit advances. *See* 12 C.F.R. § 226.5b(f)(3)(vi). To the contrary, the regulations specifically permit the lender to provide notice that the borrower will have to request reinstatement in conjunction with the initial notice suspending the borrower's line of credit. 12 C.F.R. § 226.9(c)(1)(iii). The lender may therefore provide notice of its intent to shift the reinstatement initiative to the borrower up to three business days *after* the line of credit has been suspended. *See id.*

11

The complaint and exhibits demonstrate that SunTrust Bank informed Krinsk that her credit line was suspended for the specific reason that the bank had a reasonable belief that she would be unable to repay the loan due to a material change in her finances.  (Compl. Ex. H).  The bank informed her that the decision was based on her credit report and the updated information she had provided. (Compl. Ex. H). Sun Trust Bank informed Krinsk how to obtain a copy of that report. (Compl. Ex. H). Further, the letter specifically instructed her on the requirements for requesting reinstatement of her credit.  (Compl. Ex. H).  On these facts, Plaintiff has not alleged a violation of Regulation Z of the Truth in Lending Act.[4]

6.      *Breach of the Implied Covenant of Good Faith and Fair Dealing*

Under Florida law, every contract contains an implied covenant of good faith and fair dealing, which is designed "to protect the parties' reasonable commercial expectations." *Meruelo v. Mark Andrew of Palm Beaches, Ltd.*, 12 So. 3d 247, 250-51 (Fla. 4th DCA 2009).  SunTrust Bank correctly argues that Krinsk cannot state a claim for breach of the implied covenant of good faith and fair dealing in the absence of a viable breach of contract claim.  *See id.* at 250 ("The covenant of good faith must relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements."). However, SunTrust Bank's argument fails because, as discussed, Krinsk's claim for breach of contract is viable and not subject to dismissal.

---

[4] In her purported cause of action for violation of Regulation Z, Plaintiff does not challenge the reasonableness of SunTrust Bank's belief that she would be unable to fulfill her repayment obligations.

7.    *Declaratory Judgment*

Krinsk seeks a declaratory judgment that SunTrust Bank is obligated to continue providing the line of credit pursuant to the loan agreement. SunTrust Bank argues that the contract is clear and unambiguous and therefore Plaintiff cannot seek a declaratory judgment to resolve factual issues bearing on its liability. At one time, the existence of unresolved issues of fact precluded relief under the Florida Declaratory Judgment Act. *See, e.g., Medical Center Health Plan v. Brick*, 572 So. 2d 548, 551 (Fla. 1st DCA 1990). However, the Florida Supreme Court has recently receded from that position. *See Higgins v. State Farm Fire and Cas. Co.*, 894 So. 2d 5, 10-15 (Fla. 2004) (holding declaratory action can be pursued notwithstanding the need to determine factual issues). Consequently, the existence of unresolved factual issues bearing on SunTrust Bank's obligation to provide the line of credit is no bar Krinsk's declaratory relief action. *See id.*

8.    *Liability of SunTrust Banks, Inc.*

Plaintiff contends that SBI is liable for the actions of its subsidiary, SunTrust Bank. "It is a general principle of corporate law . . . that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). However, "an equally fundamental principle of corporate law" dictates that "the corporate veil may be pierced and the shareholder held liable for the corporation's conduct when, *inter alia*, the corporate form would otherwise be misused to accomplish certain wrongful purposes, most notably fraud, on the shareholder's behalf." *Id.* at 62.

Under Florida law, the corporate veil can only be pierced upon a demonstration that "(1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation; (2) the corporate form [was] used fraudulently or for an improper purpose; and  (3) the

13

fraudulent or improper use of the corporate form caused injury to the claimant." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008). Here, Krinsk has only alleged that SunTrust Bank was "operated" by SBI and "acted at [its] direction."[5] (Compl. ¶ 8). This conclusory statement does not rise to the requisite level of domination and control required to pierce the corporate veil. *See Gasparini*, 972 So. 2d at 1055. Further, the complaint is devoid of any facts which would support a contention that the corporate form was used for an improper purpose which caused injury to Krinsk. *See id.* Plaintiff has not pled facts which would justify piercing SunTrust Bank's corporate veil and therefore her claims against SBI must be dismissed.[6]

9.    *Personal Jurisdiction over Wells*

Wells has averred that he is a resident of Georgia. Because he is a non-resident defendant, a two-step inquiry governs whether personal jurisdiction can be properly be exercised. First, jurisdiction must be appropriate under Florida's long-arm statute. *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). Second, the exercise of personal jurisdiction must comply with the Due Process Clause of the Fourteenth Amendment. *Id.*

---

[5] In opposing dismissal, Plaintiff submitted an affidavit to provide additional factual support for the argument that SunTrust Bank is an instrumentality of SBI. However, the affidavit is not properly considered on a motion to dismiss pursuant to Rule 12(b)(6), which focuses only on the well-pleaded allegations in the complaint. *See Epps v. Watson,* 492 F.3d 1240, 1243 (11th Cir. 2007). Defendants' motion to strike the affidavit, while well-taken, is not necessary.

[6] Plaintiff also argues that SBI is liable for the acts of SunTrust Bank because the corporations were a common enterprise. "Where one or more corporate entities operate in a common enterprise, each may be held liable for the deceptive acts and practices of the other." *Commodity Futures Trading Comm'n. v. Int'l Berkshire Group Holdings,* No. 05-61588, 2006 WL 3716390, at *7 (S.D. Fla. Nov. 3, 2006). Plaintiff relies on cases which imposed liability on common enterprises for fraudulent or deceptive acts in violation of the Federal Trade Commission Act, the Commodity Exchange Act, and the Securities Exchange Act. *See id.*; *F.T.C. v. Capital Choice Consumer Credit, Inc.*, No. 02-21050 civ., 2004 WL 5149998 (S.D. Fla. Feb. 20, 2004); *F.T.C. v. Wolf,* No. 94-8119-CIV-FERGUSON, 1996 WL 812940 (S.D. Fla. Jan. 31, 1996); *S.E.C. v. Elliott*, 953 F.2d 1560 (11th Cir. 1992). Assuming, without deciding, that common enterprise liability applies to Plaintiff's claims, Plaintiff has not pled facts which would support an argument that SBI and SunTrust Bank operated as a common enterprise or that SBI and SunTrust Bank used the corporate form to engage in any fraudulent conduct.

The plaintiff bears the initial burden of alleging sufficient facts to make out a prima facie case of jurisdiction. *Id.* If the initial burden is satisfied, the defendant may submit evidence to challenge the exercise of jurisdiction. *Id.* If the defendant's evidence refutes all grounds on which jurisdiction was premised, the burden shifts back to the plaintiff to substantiate the allegations in the complaint with affidavits or other competent proof. *Id.*

Krinsk argues that jurisdiction is proper pursuant to three grounds in Florida's long-arm statute: general jurisdiction, specific jurisdiction related to Wells' business activities in Florida, and specific jurisdiction related to Wells' commission of a tort in Florida. The allegations in the complaint fail to support the exercise of jurisdiction on any of these grounds. Consequently, Plaintiff has not carried her initial burden to plead a prima facie case of personal jurisdiction.

Florida's long-arm statute authorizes the exercise of general jurisdiction:

> A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. § 48.193(2). Plaintiff has not pled any facts regarding Wells' activities in the state, much less "substantial and not isolated" activities. *See id.* Consequently, general jurisdiction is lacking.

Under Florida law, specific jurisdiction may be exercised over claims related to a non-resident defendant's "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." Fla. Stat. § 48.193(1)(a). To be subject to jurisdiction under this provision, the defendant must "personally" engage in a business relationship in Florida. *Doe v. Thompson*, 620 So. 2d 1004, 1005-06 (Fla. 1993); *Aspsoft, Inc. v. Webclay*, 983 So. 2d 761, 766 (Fla. 5th DCA 2008). Krinsk has only alleged that she had a business

15

relationship with SunTrust Bank.  She has not alleged a business relationship with Wells, personally.

Plaintiff has therefore failed to plead facts which would establish specific jurisdiction over Wells

pursuant to subsection (1)(a).  *See Doe*, 620 So. 2d at 1005-06; *Aspsoft, Inc.*, 983 So. 2d  at 766;

*Carter v. Estate of Rambo*, 925 So. 2d 353, 356 (Fla. 5th DCA 2006).

Florida Statute § 48.193(1)(b) authorizes the exercise of specific jurisdiction over claims

related to tortious acts which a non-resident has committed in Florida.  Where personal jurisdiction

is premised on the commission of a tort in Florida, "[t]he threshold question that must be determined

is whether the allegations of the complaint state a cause of action." *Wendt v. Horowitz*, 822 So. 2d

1252, 1260 (Fla. 2002).  As discussed, Plaintiff failed to state a cause of action for fraud or negligent

misrepresentation.  There is therefore no basis for the exercise of personal jurisdiction over Wells

pursuant to subsection 48.193(1)(b).  *See 8100 R.R. Ave. Realty Trust v. R.W. Tansill Constr. Co.*,

638 So. 2d 149, 151 (Fla. 4th DCA 1994).

Further, Plaintiff's only allegation as to Wells is that he was an officer of SunTrust Bank and

therefore was "directly involved" in its conduct.  (Compl. ¶ 7). The only conclusion which can be

drawn from these allegations is that Wells was acting in the capacity of a corporate representative.

Under the corporate shield doctrine, the "acts of [a] corporate employee performed in [his] corporate

capacity do not form the basis for jurisdiction over [the] corporate employee in his individual

capacity." *Doe*, 620 So. 2d at 1006 (citation omitted). Although the doctrine does not apply where

the officer directed "fraud or other intentional misconduct" at parties in Florida, Plaintiff has not

alleged conduct on the part of Wells which constituted fraud or an intentional tort.  *See Rensin v.*

*State, Office of Atty. Gen., Dept. of Legal Affairs*, 18 So. 3d 572, 575-76 (Fla. 1st DCA 2009).

Therefore, under the facts alleged, Wells cannot be forced to "defend a suit brought against him

16

personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." *Doe*, 620 So. 2d at 1006 (quotation omitted).

Plaintiff has not satisfied her initial burden to allege sufficient facts to bring her claims against Wells within the ambit of Florida's long arm statute. It is therefore unnecessary to consider whether the exercise of personal jurisdiction would offend due process.

Accordingly, it is **ORDERED** that

(1)     SunTrust Bank's motion to dismiss (Dkt. 11) is **GRANTED IN PART.** Count One (Elder Abuse), Count Three (Deceit), Count Four (Negligent Misrepresentation), Count Five (Breach of Fiduciary Duty), and Count Six (Violation of Regulation Z), of Plaintiff's complaint are **DISMISSED** without prejudice. The motion (Dkt. 11) is denied in all other respects.

(2)     The motion to dismiss filed by SunTrust Banks, Inc. and James M. Wells, III (Dkt. 16) is **GRANTED IN PART.** Plaintiff's claims against SunTrust Banks, Inc. are **DISMISSED** without prejudice. Further, the Complaint as to James M. Wells, III is **DISMISSED** without prejudice.

(3)     Plaintiff is granted leave to file an amended complaint within twenty (20) days.

(4)     Ruling on SunTrust Banks, Inc. and James M. Wells, III's Motion for Rule 11 Sanctions (Dkt. 34) is **DEFERRED**.

(5)     Defendants' Motion to Strike the Declaration of James A. Wardell (Dkt. 45) is **DENIED**.

**DONE AND ORDERED** in chambers this ___8___ day of January, 2010.

_____
**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record

17